**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

JOSEPH ANTONETTI,  )
               )
       Plaintiff,  )
               )   2:07-cv-00162-MMD -VCF
v.             )
               )   **O R D E R**
DWIGHT NEVEN, *et al.*,  )
               )   (Motion to Compel Discovery #157)
       Defendants.  )
               )

Before the court is *pro se* plaintiff Joseph Antonetti's Motion to Compel Discovery. (#157). Defendants filed an Opposition (#158), and plaintiff filed a Reply (#159).

**Background**

The court granted plaintiff's motion to proceed *in forma pauperis* on March 28, 2007. (#5). On January 4, 2008, the court ordered the clerk to file the complaint (#12), and on January 9, 2008, the complaint was filed (#13). The defendants filed a motion to dismiss on May 12, 2008 (#26), and on September 29, 2008, plaintiff filed a motion for leave to file an amended complaint (#36). On December 1, 2008, the plaintiff filed a motion to compel discovery (#42), and in defendants' opposition thereto, they argued that discovery at this point was premature, as the motion to dismiss alleges immunity from suit (#43). The defendants also filed a motion for a protective order (#44), asking this court to stay all discovery pending a ruling on the motion to dismiss (#26). The court granted the defendants' request to stay discovery and did not enter a scheduling order. (#45).

On December 29, 2008, and on December 30, 2009, plaintiff filed motions to compel (#47 and #48). On February 12, 2009, the court entered an order granting plaintiff's motion to amend complaint (#36) and denying defendants' motion to dismiss (#26). (#51). The court also gave plaintiff thirty days to show cause why his complaint should not be dismissed for failure to exhaust administrative remedies.

*Id.* Plaintiff filed his response to the order to show cause on February 23, 2009, and a motion for scheduling order on March 27, 2009 (#59). On September 2, 2009, the court entered a minute order denying plaintiff's motions to compel (#42, #47, and #48) without prejudice pending an order deciding the show cause issue. (#68). On March 12, 2010, the court entered an order dismissing plaintiff's amended complaint (#70) and an order entering judgment is favor of defendants (#70). Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit. (#74).

On October 12, 2011, the Ninth Circuit issued a memorandum, affirming in part, reversing in part, and remanding. (#82). On April 9, 2012, the court issued a minute order providing for a pretrial order deadline of May 11, 2012. (#86). On April 20, 2012, plaintiff filed a motion for appointment of counsel. (#87). On April 24, 2012, the defendants filed their answer to plaintiff's amended complaint. (#88). On May 11, 2012, defendants filed a motion to vacate (#86), asking this court to enter a scheduling order and vacate the minute order setting the pre-trial order deadline. (#90). On May 24, 2012, the action was reassigned to the Honorable Judge Miranda M. Du (#93), and on June 25, 2012, the action was reassigned to the undersigned Magistrate Judge (#96). On July 27, 2012, plaintiff filed a motion to compel discovery and interrogatories. (#107).

On August 29, 2012, the court issued an order (1) granting defendants' motion to vacate (#90), (2) vacating the pretrial order deadline of May 11, 2012, (3) commencing discovery and issuing a scheduling order, and (4) denying plaintiff's motion to compel (#107) *without prejudice*. (#110). The court held that "[a]s a scheduling order has not been issued and discovery has not commenced, plaintiff's motion to compel is premature." *Id.* The court entered the following scheduling order: Discovery Deadline February 25, 2013; Dispositive Motions Deadline March 27, 2013, and Joint Pre-Trial Order Deadline of April 26, 2013. *Id.*

Plaintiff filed a motion to reconsider (#111), a motion for experts (#114), and a motion to compel discovery (#119). On December 26, 2012, the court issued an order denying plaintiff's motion for appointment of counsel (#87), motion for reconsideration (#111), and motion for experts (#114),

2

and denying without prejudice plaintiff's motion to compel (#119). (#132).

On January 4, 2013, plaintiff filed a motion to reconsider court's order (#132) (#136) and a motion to compel (#137). The court held a hearing on plaintiff's motions (#128, #136, and #137) on January 29, 2013. (#141). On February 5, 2013, the court issued a written order on the motions (#128, #136, and #137), denying plaintiff's motion for counsel (#128) and motion for reconsideration (#136), and granting in part and denying in part plaintiff's motion to compel (#137). (#144). The court ordered that "on or before February 19, 2013, the parties must meet and confer to agree upon which supervisors are relevant to the remaining claims," and that "within sixty (60) days from the entry of this order, defendants must produce (1) all yard log books for the relevant time period, (2) all videos and photographs relating to the excessive force incident, and (3) the identities of all agreed upon supervisors." *Id.*

On March 27, 2013, defendants filed a motion to extend time regarding dispositive matter. (#150). On April 23, 2013, plaintiff filed a motion to allow amendment to scheduling order (#110). (#152). On April 30, 2013, the court held a hearing and granted that the parties' motions to extend (#150 and #152) and plaintiff's request to amend his complaint to add defendants Mr. Monin and Mr. Collins. (#155). The court ordered that "1) Dispositive Motions due by 6/28/2013; Proposed Joint Pretrial Order due by 7/29/2013 if no dispositive motions are filed. If Dispositive Motions are filed, the Joint Pretrial Order will be due 30 days after the Court has issued its ruling on the dispositive motions." *Id.* The court's order did not re-open discovery. *Id.*

On May 7, 2013, plaintiff filed the instant motion to compel (#157) and a supplement to his amended complaint (#156). Defendants filed an opposition (#158), and plaintiff filed a reply (#159). Defendants filed a motion to extend time on June 27, 2013. (#160). On July 2, 2013, the court issued an order granting defendants' motion to extend time (#160). (#161). The court held that the plaintiff may amend his complaint as follows: "(1) to add Mr. Monins and Mr. Collins as defendants; and (2) to expand his claim of deprivation of outdoor exercise to cover 2004 to the present," and that:

3

> Attorney General's office has seven (7) days to either file a notice of acceptance of service on behalf of defendants Monins and Collins or file a notice of their last known address under seal. The deadline for filing dispositive motions is extended to either: (1) sixty (60) days from Plaintiffs' filing of the amended complaint; or (2) thirty (30) days from the deadline for Plaintiff to file the amended complaint in the event Plaintiff fails to file the amended complaint within the 30-day deadline established by the Court.

*Id.* The court's order did not re-open discovery. *Id.*

**Motion To Compel**

    **A.    Arguments**

Plaintiff seeks an order compelling the defendants to produce several requested documents and answer interrogatories, and argues that "defendants have no excuse for their failures [to produce the discovery, because] they have known since 8/31/2007 and 12/19/2008 that Mr. Antonetti required [the production.]" (#157). Plaintiff's requests are as follows: (1) complaints of abuse, (2) "written statements, photos, video, reports above Nov. 15, 2005 by "I.G." at HOSP," (3) medical records and photos, and (4) the current and/or past policies, regulations, and rules regarding use of force. *Id.* Plaintiff also asserts that defendants "have refused to answer "names" [of] "who" is responsible for various policies and areas of prison regarding this case." *Id.* Plaintiff states that defendants have not provided complete yard logs and photos of yard cages from 2005. *Id.*

Defendants ask this court to deny the motion to compel, as plaintiff has been provided with the requested documents and interrogatory answers, and many of the documents requested are irrelevant to his claims. (#158). Defendants represent to the court that the parties met and conferred on February 13, 2013, and, in addition to the discovery ordered produced by the court's order (#144), defendants agreed to provide plaintiff with the names of the unit supervisors during the year 2005. *Id.*

Defendants address each of plaintiff's discovery disputes as follows:

(a) identities of supervisors: defendants attached a letter to plaintiff dated March 7, 2013, containing the identities of the three supervisors who were assigned to plaintiff's unit in 2005 (Exhibit A),

4

(b) production of videos, photographs and memos regarding the incident of November 15, 2005: defendants assert that they "produced the Notice of Charges stemming from the November 15, 2005, incident," and that "there are no known photographs or videos of the incident,"

(c) history of abuse by the defendants and other complaints "showing widespread abuse": defendants argue that this information is not relevant to this action, as any alleged abuse or denial to *other* inmates is irrelevant to plaintiff's claims that *he* was denied outdoor exercise and meals and that defendant Strout used excessive force against *him*, and that under Federal Rule of Evidence 404 evidence of prior bad acts is inadmissible,

(d) photographs of exercise cages from 2005: defendants argue that there are no known photographs of the exercise cages as they were in 2005, and that the cages are not relevant to plaintiff's claim that he was denied yard time,

(e) policy regarding use of force: defendants state that plaintiff was provided with use of force policy through defendant Baca's answers to interrogatories (Exhibit B),

(f) disciplinary measures taken against defendant Strout for his alleged use of force: defendants assert that defendant Strout was not disciplined for any alleged use of excessive force and there are no documents,

(g) files, notes, video, photographs, names and report from the "I.G." and NDOC personnel: counsel represents that thy have not "identified any videos or photographs of the incident, or any taken by any medical staff. Indeed, plaintiff now has his medical records and can discern for himself that there are no photographs in those records," and

(h) plaintiff's medical records: defendants assert that plaintiff was given his medical records on March 21, 2013 (Exhibit C). *Id.*

Plaintiff argues that the defendants have still not complied with the discovery requests, and addresses each category of discovery as follows:

(a) identities of supervisors: plaintiff asserts that defendants only provided the names of the

5

1 supervisors, and did not explain the positions they hold,

2     (b) production of videos, photographs and memos regarding the incident of November 15, 2005: plaintiff argues that the request is not fulfilled, as "interestingly notice of charges defendants found "relevant" are a "statement" exactly to any discipline taken against Mr. Antonetti to "prejudice jury," but same defendants claim discipline taken on Strout is hearsay?"

6     (c) history of abuse by the defendants and other complaints "showing widespread abuse": plaintiff argues that this information goes to "motive and intent relevant to "use of force," also "habit evidence" under Rule 406 FRE, practice of organization, relevant to prove conduct on particular occasion," and that a history of abuse shows that defendants ignored a serious risk to inmate safety by allowing officers with history of abuse to work in positions to carry on abuse,

11     (d) photographs of exercise cages from 2005: plaintiff asserts that the cages show that defendants did not have proper facilities to provide required exercise time, and that plaintiff "finds it hard to believe" that no photos were taken of the cages in 2005,

14     (e) policy regarding use of force: plaintiff asserts that no past or present "use of force" policy has been provided, "especially for relevant period "2005" - show "bates stamp?" simple as that,"

16     (f) disciplinary measures taken against defendant Strout for his alleged use of force: plaintiff asserts that the results of the I.G. investigation are relevant and needed to develop discovery, and state that defendants should have to "prove" that there are no documents by providing Strout's file,

19     (g) plaintiff's medical records: plaintiff points the court to Exhibit A and B, and asserts that the request is not over broad, and that he "specifically requested the files, reports, *et al* from inspector generals' investigation of Nov. 15, 2005 use of force, assault, on Mr. Antonetti," and

22     (h) plaintiff's medical records: plaintiff argues that the medical records do not contain x-rays or intake physical examinations, and that Mr. Antonetti does not know what else would be contained in the records.  (#159).

25 . . .

6

**B.     Relevant Law/Discussion**

Federal Rules of Civil Procedure 33 and 34 permit each party to serve the opposing party with document requests and interrogatories within the scope of Rule 26(b) that are "relevant to any party's claim or defense..." or, for good cause shown, "relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id*.

Under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). In responding to Rule 34 requests, "the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Pursuant to Rule 37(a)(3)(B)(iii) and (iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory submitted under Rule 33; or" "a party fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). Local Rule 26-7 provides that "[a]ll motions to compel discovery or for protective order shall set forth in full the text of the discovery originally sought and the response thereto, if any."

Rule 11(b)(4) of the Federal Rules of Civil Procedure states that "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:...the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4).

As an initial matter, plaintiff's motion does not comply with Local Rule 26-7, and does not

7

provide "in full the text of the discovery originally sought" or the responses thereto. Without such compliance, the court is unable to fully assess whether discovery requests were appropriate and whether responses were adequate. As plaintiff is proceeding *pro se*, the court will still entertain the motion (#157), but advises plaintiff that he is required to comply with the local and federal rules of this court. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S. Ct. 584 (1972)(holding that *pro se* plaintiffs are held to a less stringent standard than those who are represented by counsel.); *Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986)(holding that *pro se* parties are not excused from following the rules and orders of the court).

In order to address plaintiff's discovery disputes, it is necessary for the court to discuss plaintiff's remaining claims. The Ninth Circuit remanded the following causes of action to this court: (1) an Eighth Amendment claim pertaining to alleged deprivation of outdoor exercise from December 2004 through November 2005; (2) the alleged use of excessive force on November 15, 2005; and (3) the deprivation of a meal on November 15, 2005. (#82 and #83).

Plaintiff asserts that he received only three (3) to four (4) hours of outdoor exercise per week, as oppose to the ten (10) hours provided for in the prison regulations, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (#52). Plaintiff must demonstrate "the state of mind of the person imposing the deprivation" in an Eighth Amendment claim for deprivation of outdoor exercise. *LeMaire v. Maass*, 12 F.3d 1444, 1451 (9th Cir. 1993). With regard to the second claim, the inquiry in an excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

Plaintiff alleges that he was deprived of a meal on November 15, 2005. (#82). The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009)(quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

"[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* Establishing a violation of the Eighth Amendment requires a two-part showing: the inmate must (1) objectively show that he was deprived of something "sufficiently serious," and (2) then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Id.*

Discovery is limited to materials that are relevant to plaintiff's claims discussed above and reasonably calculated to lead to the discovery of *admissible* evidence. *Oppenheimer Fund*, 437 U.S. at 351. The court notes that (a) discovery is closed pursuant to the court's scheduling order (#110), (b) the court's order requiring production of documents and answers to interrogatories did not extend the discovery deadline, and simply permitted for the production of documents and answers to interrogatories outside the discovery deadline (#144),(c) the court's order permitting amendment of the complaint did not re-open discovery (#161), and (d) neither party has timely sought an extension of discovery. The court addresses each of plaintiff's discovery requests below.

### 1. Identities of Supervisors

In the court's order on plaintiff's first motion to compel, the court held that "[p]laintiff stated during the hearing that he is particularly concerned with discovery regarding...identities of individuals (supervisors)," and that defense "[c]ounsel also stated that she will provide plaintiff and the court with the identities of supervisors if plaintiff narrows his requests as to time-period and department." (#144). The court held that the identities of the supervisors are relevant to plaintiff's claims, and that "[o]n or before February 19, 2013, the parties must meet and confer to agree upon which supervisors are relevant to the remaining claims," and that within 60 days, defendants must produce "the identities of all agreed upon supervisors." *Id.*

Defendants represent to the court that during a telephonic meet and confer held on February 13, 2013, the parties agreed that defendants would provide plaintiff with the names of the unit supervisors during the year 2005. (#158). Defendants also attached a letter to plaintiff dated March 7, 2013,

9

containing the identities of the three supervisors who were assigned to plaintiff's unit in 2005: Olie Poe, Frederick Rogers, and Ronald Brooks. *Id* (Exhibit A). Plaintiff's reply states that he wants to know that position the supervisors held: "what are they?" (#159). The court finds that the defendants have complied with the court's order to produce the identities of the supervisors (#144). The plaintiff's motion with regard to this issue is denied.

### 2.  Production of Videos, Photographs and Memos Re: Incident of 11/15/05

The court stated in its order on the first motion to compel, that during the hearing, "[p]laintiff stated that there was video taken when the SERT team escorted him to 'medical' on the day of the incident and that the "investigator generals" took photographs of his alleged injuries after the incident," and "defense counsel asserted that she was not aware of either existing, but that she would check with the medical director." (#144). The court held that any photographs or videos surrounding the alleged excessive force incident are relevant to the plaintiff's remaining claims. *Id.* The court ordered production of all "all videos and photographs relating to the alleged excessive force incident..." within 60 days from the court's order. *Id.*

Defendants assert that they "produced the Notice of Charges stemming from the November 15, 2005, incident," and that "there are no known photographs or videos of the incident." (#158). Plaintiff asserts that the "request is not fulfilled," and argues that the defendants cannot find that the notice of charges against plaintiff is relevant while asserting that any disciplinary action taken against defendant Strout is prejudicial and hearsay. (#159). Defense counsel and plaintiff are under an obligation to make truthful representations to the court pursuant to Fed. R. Civ. P. 11. As such, the court accepts defense counsel's representation that there are "no known photographs or videos of the incident." Defense counsel has an obligation to supplement production if such photographs or videos are discovered. *See* Fed. R. Civ. P. 26 (e)(1)(A)("A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material

10

1 respect the disclosure or response is incomplete or incorrect, and if the additional or corrective
2 information has not otherwise been made known to the other parties during the discovery process or
3 in writing..."). Defendants provided plaintiff with the notice of charges (#158), and plaintiff does not
4 dispute that this was responsive to his request, rather he argues that other discovery should be
5 admissible if the notice of charges is (#159). Plaintiff's request with regard to production of videos,
6 photographs, and memorandums is denied.

### 3. History of Abuse Other Complaints "Showing Widespread Abuse"

Plaintiff's claim of excessive force used against him is a personal claim, and requires an inquiry into "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)(stating that "constitutional claims are personal"). The jury will not examine whether *other inmates* filed complaints of abuse against the defendant, and in fact, such evidence of "prior bad acts" is *not admissible* under Fed. R. Evid. 404. Since the scope of discovery is limited to material that is reasonably calculated to lead to the discovery of *admissible* evidence under *Oppenheimer Fund*, 437 U.S. at 351, the information plaintiff's seeks is not discoverable. Plaintiff's request for an order compelling such material is denied.

### 4. Photographs of Exercise Cages From 2005

Plaintiff alleges that he was denied proper exercise/yard time, and that he received only three (3) to four (4) hours of outdoor exercise per week, as oppose to the ten (10) hours provided for in the prison regulations, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (#52). To prove this claim, plaintiff must demonstrate "the state of mind of the person imposing the deprivation" of outdoor exercise. *LeMaire*, 12 F.3d at 1451. The court held that yard log books are relevant to the plaintiff's claim, and ordered defendants to produce all yard log books for December 2004, through December 2005. (#144). Plaintiff's claim does not include any allegation relating to the "exercise cages" as they existed in 2005, and only alleges that he was denied sufficient

11

exercise/yard time. (#52). As such, photos of the "exercise cages" are irrelevant and not discoverable. *See Oppenheimer Fund*, 437 U.S. at 351.

Plaintiff argues in his reply that he needs such photographs to "establish "how many" cages were available (and are)[,] showing defendants did not have proper facilities to provide required exercise time." (#159). Discovery in this action is closed (#110), and plaintiff's request is denied.

### 5. Policy Regarding Use of Force

Defendants represent to the court that "[p]laintiff was provided with use of force policy via [d]efendant Baca's answers to interrogatories." (#158). Plaintiff's interrogatory asked: "What is the proper procedure for use of force at HDSP 2005-present?" (#158-2)(Exhibit B). Defendant Baca's answer is as follows: "staff may exercise the use of verbal orders, physical contact, or as a last resort deadly force. Level of force used and type of equipment used is dictated by the assessed risk presented and the severity of the conditions of the situation. When force is necessary, it will be limited to the minimum degree necessary. When possible, verbal commands will be used prior to any use of force. A show of force will be used if possible prior to any use of force. Non-deadly force is to be used as the situation dictates, with or without authorized equipment." *Id.*

Plaintiff asserts in his reply that no past or present use of force policy has been provided, "especially for the relevant time period "2005" - show "bates stamp?" simple as that." (#159). As defendants adequately answered plaintiff's request (#158-2) and discovery in this action is closed (#110), plaintiff's request is denied.

### 6. Disciplinary Measures Taken Against Defendant Strout for Use of Force

Plaintiff asks this court to order defendants to provide information regarding disciplinary actions taken against defendant Strout for his alleged use of force against plaintiff. (#157 and #158). Defendants represent to the court that defendant Strout was not disciplined for any alleged use of excessive force and that there are no documents. (#158). Plaintiff attached to his reply as Exhibit B a grievance regarding the alleged use of force, wherein the response states that his grievance was

denied and that defendant Strout "gave [plaintiff] every opportunity to remove [his] arms, in addition to numerous warnings. [Plaintiff] refused to comply to the direct orders Sgt. Strout gave [him]." (#159)

The document presented by plaintiff supports defendants' representation that defendant Strout was not found to have done anything wrong and was not disciplined. *Id.* Defense counsel and plaintiff are under an obligation to make truthful representations to the court pursuant to Fed. R. Civ. P. 11. As such, the court accepts defense counsel's representation that defendant Strout was not disciplined and that there are no documents (#158). Plaintiff's request is denied.

### 7. Files, Notes, Video, Photographs, Names and Report from the "I.G." and NDOC Personnel:

As stated above, the court accepts defendants' representation that no photographs or videos of the incident exist. With regard to the remaining requests, plaintiff asserts in his reply that he specifically requested the "files, reports, *et al.,* from inspector general's investigation of Nov. 15, 2005, use of force, assault, on Mr. Antonetti." (#159). The jury will need to determine whether force was "applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" to plaintiff. *Hudson*, 503 U.S. at 7.

Plaintiff presented the court with an "Investigation Detail Report for AG Office" for the November 15, 2005, incident. (#159)(Exhibit A). Plaintiff has therefore been provided with the investigative report detailing the incident, including names of witnesses. *See Id.* The inspector general's conclusion regarding the incident is irrelevant to whether defendant Strout actually used excessive force. To permit plaintiff to present evidence of what *someone else* concluded about the incident could cause the jury to supplement their own reasoning with the investigators'. Plaintiff's request is denied.

### 8. Plaintiff's Medical Records

Defendants assert that plaintiff was given his medical records on March 21, 2103. (#158). Attached to defendants' opposition is a letter dated March 21, 2013, stating that plaintiff's medical

13

records were enclosed. *Id* (Exhibit C). Plaintiff alleges that the medical records do not include X-rays or "intake physical examinations." (#159). Plaintiff did not provide the court with a copy of the medical file he received or with any evidence or argument to support his conclusion that the medical file should contain an X-ray. (#159). The court therefore denies plaintiff's request.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff Joseph Antonetti's Motion to Compel Discovery (#157) is DENIED.

DATED this 25th day of July, 2013.

**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**